IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ERNEST GARRETT,**<br>        **Plaintiff,**<br><br>    **v.**<br><br>**AMERICAN FEDERATION OF<br>STATE, COUNTY & MUNICIPAL<br>EMPLOYEES AFL-CIO (AFSCME),<br>AFSCME DISTRICT COUNCIL 33,<br>and FRANK PICCIOLI,**<br>        **Defendants.** | **CIVIL ACTION**<br><br><br><br>**NO. 24CV1105** |

## MEMORANDUM OPINION

This case stems from Plaintiff Ernest Garrett's recent removal from his position as president of District Council 33, the Philadelphia-area affiliate of the American Federation of State, County & Municipal Employees AFL-CIO ("AFSCME"), and his thwarted desire to run again for union president in the upcoming election.

Garrett's term as president of District Council 33 began in October 2020. Three years later, five union officials—Omar Salaam, Kim Athanasiadis, Damon Kinsey, Shermeka Core, and Leonard Brown—filed charges against him with the AFSCME Judicial Panel alleging his improper use of union funds. An AFSCME hearing officer—finding Garrett guilty on some, but not all, of the charges—issued an order removing him from office and barring him from running for election to any union leadership position for the next four years.

Garrett subsequently filed this action against Defendants AFSCME, District Council 33, and Frank Piccioli—the hearing officer who adjudicated the case against him—arguing that his ouster violated the Labor Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. §§ 441 *et seq.* He has now moved for a preliminary injunction, seeking a court order: (1) enjoining

the hearing officer's decision insofar as it holds that Plaintiff is removed from office and barred from running for office for four years; and (2) that Plaintiff may not be denied access to District Council 33's nomination and election process.

A preliminary injunction is "an extraordinary and drastic remedy," *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008).  For the following reasons, Garrett has not established a right to this relief.  Accordingly, his motion will be denied.

## I.   FACTUAL BACKGROUND

The charges brought against Garrett to the AFSCME Judicial Panel were threefold.  First, he was accused of impermissibly executing personnel decisions without approval of District Council 33's Executive Board, such that the Board was "denied the opportunity to approve the hiring and salaries of a number of individuals who now work for District Council 33."  This included multiple instances where Garrett made unilateral hiring decisions and altered employee salaries without approval of the Executive Board.  One of these hiring decisions involved a relative of Garrett (his sister-in-law).

Second, Garrett was accused of "routinely mak[ing] expenditures of the District Council's funds without approval of the AFSCME District Council 33 Executive Board," thereby denying the Board "the opportunity to approve several costly expenditures that have been made from District Council 33's coffers."  The charging document identified multiple expenditures—ranging in value from $9,000 for "janitorial services" to almost $500,000 for "member apparel"—that it alleged were never approved by the Executive Board.  Some of these expenditures were personal in nature; in one instance, for example, Garrett allegedly used District Council 33 funds to pay off several parking tickets.

Third, Garrett was accused of mismanaging District Council 33's Legal Services Fund.

Created by the union's collective bargaining agreement with the city of Philadelphia, the Legal Services fund is governed by a Declaration of Trust that requires various actions by District Council 33's president.  Garrett, the charge alleged, violated these obligations when, *inter alia*, he failed to convene the required meetings of the fund's trustees, unilaterally appointed its director without trustee approval, and unilaterally appointed a law firm to provide fund benefits.

These actions, the charging document stated, violated provisions of the union's Local Constitution as well as AFSCME's International Constitution.  First, Article IX, § 5(i) of District 33's Constitution provides that "Expenditures of funds of the Council shall be authorized or approved by the Executive Board, subject to the approval of the delegates."  Second, Article IX, § 5(k) of District 33's Constitution provides that "The Council Executive Board shall establish annual salaries and expenses for . . . all full time staff employees of the Council."  Third, Article X, § 2(A) of the AFSCME International Constitution authorizes charges against a member for "Violation of any provision of this Constitution or any officially adopted and approved constitution of a subordinate body to which the member being accused is subject."  And fourth, Article X, § 2(B) of the AFSCME International Constitution, which authorizes charges against a member for "Misappropriation, embezzlement, or improper or illegal use of union funds."

As a punishment for these alleged infractions, the charging document sought to remove Garrett from office and permanently suspend him from holding or seeking any elected position at any level of the union.

Pursuant to AFSCME's internal procedures, the Judicial Panel (is a body created by Article XI of AFSCME's International Constitution) convened a trial.  Defendant Frank Piccioli was appointed to serve as its hearing officer.

Several days before the trial was set to begin, an attorney representing the five union

officials who brought the charges against Garrett wrote to the Judicial Panel that they "will no

longer be <u>addressing</u> violations of Article IX, Section 5(i) and 5(k) of the AFSCME District

Council 33 1977 Constitution that were alleged in their October 12, 2023 charges."  (emphasis

added).  Nevertheless, the letter did not specifically state that they were <u>withdrawing</u> the charges

premised on violations of District 33's Constitution.  Indeed, it went on to state that the charging

officials "will proceed with addressing charges under Article X, Sections 2(A) and 2(B) of the

AFSCME International Constitution, <u>as well as any other provision of the AFSCME</u>

<u>International and District Council 33 Constitutions that the Judicial Panel deems relevant</u>."

(emphasis added).

Piccioli conducted the trial via Zoom across two days in December 2023 and January

2024.  Through counsel, Garrett primarily argued that: (1) he had authority for all of the actions

he took unilaterally, as his predecessor had established a practice of doing so; and, (2) contrary to

allegations of mismanagement, District Council 33's financial health had improved under his

stewardship.

The following month, Piccioli issued a 47-page decision finding Garrett guilty of some,

but not all, of the allegations against him.  At the outset, he acknowledged the letter that the

charging officials would not be addressing the District Council 33 Constitution.  "With that said,

Article XI, Section 1 of the District Council 33 Constitution provides that 'This council shall at

all times be subject to the provisions of the Constitution of [AFSCME].'  This decision

references and makes conclusions on issues raised by the parties that implicate provisions of the

District 33 Constitution and AFSCME Financial Standards Code, that while the Charging Parties

do not cite as being violated, are nevertheless relied upon in making the below findings."

With respect to the first of the three charges, Piccioli concluded that under the District

Council 33 Constitution, the Council president "is not required to seek Executive Board approval when hiring an individual into a previously existing position and there is no change to that position's previous salary approved by the executive board."  However, he further concluded that "Executive Board approval is required when an employee's salary is to be altered, or a new position is created or positions are combined."  Because Garrett did not obtain this approval when required, "he is guilty of violating Article X, Section 2B of the International Constitution because his decisions to establish salaries, raise salaries and lower several salaries was unauthorized and therefore an improper use of union funds."  In his discussion of the evidence against Garrett, Piccioli further discussed his "concern" with "the non-adherence to the AFSCME Financial Standards Code."  Noting that "Brother Garrett is not charged with violating the Financial Standards Code," Piccioli nonetheless wrote that if he had "followed the [Financial Standards Code] and the District Council 33 Constitution, much of this matter could have been avoided."

On the second charge, Piccioli dismissed most of the allegations of improper expenditures, but found Garrett guilty in three respects.  First, after becoming president, Garrett fired District Council 33's prior catering company, replacing it with one owned by his sister-in-law.  Piccioli noted both that this action required approval from the Executive Board, which Garrett failed to obtain, and also that it "gives the appearance of nepotism."  Second, Garrett awarded bonuses of between $3,000 and $5,000 to several District Council 33 employees without obtaining approval from the Executive Board.  This, Piccioli concluded, was a violation of Article X, § 2(B) of the AFSCME Constitution.  Finally, as President, Garrett directed the purchase of approximately $500,000 in union-branded apparel from a print shop owned by a family member of a former President of District Council 33.  Piccioli concluded both that this

expenditure was improper (the Executive Council had only budgeted roughly half that amount for purchasing union apparel), and also that by sending business to the family member of a former union official, Garrett's conduct "creates the appearance that something improper is occurring, even if that is not the case."

On the third charge, Piccioli first determined that Garrett breached the Declaration of Trust governing District Council 33's Legal Services Fund in two respects: (1) by failing to convene meetings of the Fund's trustees; and (2) by hiring a new director for the Fund without trustee approval.  Acknowledging that Declaration of Trust is "not an AFSCME document," Piccioli nonetheless concluded that Garrett's oath of office, as set forth in the International Constitution, required him to perform these duties, and so found him guilty of breaching this provision.  Piccioli also found Garrett guilty of hiring a law firm to administer Fund benefits without trustee approval, though no specific constitutional provision is cited for this finding.

Piccioli concluded his opinion by noting that although Garrett had violated the AFSCME International Constitution and Financial Standards Code, "there was no testimony offered or evidence presented to definitively conclude that Brother Garrett received direct benefits from the violations."  Accordingly, while he ordered that Garrett be removed from his position as District Council 33 President, he imposed a four-year suspension on Garrett seeking any elected position within the union, rather than the lifetime ban sought by the charging officials.

Approximately one month after Piccioli issued his opinion, Garrett exercised his rights under AFSCME's grievance procedures to appeal the decision to the full Judicial Panel.  That appeal remains pending.  That same day—March 13, 2024—he filed his Complaint in this action.

## II.    LEGAL STANDARDS

Preliminary injunctive relief is an "extraordinary remedy" that should be granted "only in limited circumstances." *Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004) (citation omitted).  When evaluating a motion seeking this remedy, the court must consider: "(1) the likelihood that the moving party will succeed on the merits of its claim; (2) the extent to which the plaintiff is being irreparably harmed by the conduct complained of; (3) the extent to which the defendant will suffer irreparable harm if the preliminary injunction is issued [i.e., balance of equities]; and (4) the public interest." *Tillery v. Leonard & Sciolla, LLP*, 437 F. Supp.2d 312, 320 (E.D. Pa. 2006) (citing *Opticians Ass'n of America v. Indep. Opticians of America*, 920 F.2d 187, 192 (3d Cir.1990)).  "A plaintiff's failure to establish any element in its favor renders a preliminary injunction inappropriate." *Nutrasweet Co. v. Vit-Mar Enters.*, 176 F.3d 151, 153 (3d Cir. 1999).  "The movant bears the burden of showing that these four factors weigh in favor of granting the injunction." *Freedom Medical Inc. v. Whitman*, 343 F.Supp.3d 509, 517-18 (E.D. Pa. 2018).

## III.    DISCUSSION

### A.  Likelihood of Success on the Merits

Because Garrett is seeking a mandatory injunction—at present, he is prohibited from running in the upcoming District Council 33 election, and he seeks a judicial order changing that status quo—"a heightened standard applies." *Hope v. Warden of York Cnty. Prison*, 972 F.2d 310, 320 (3d Cir. 2020).  To demonstrate a likelihood of success on the merits, Garrett must show that his right to relief is not just probable but "indisputably clear." *Id.* (quoting *Trinity Indus., Inc. v. Chi. Bridge & Iron Co.*, 735 F.3d 131, 139 (3d Cir. 2013)).  He has not met this threshold.

As noted, the Labor Management Reporting and Disclosure Act of 1959 ("LMRDA"), 29 U.S.C. §§ 411 *et seq.*, provides the substantive basis for Garrett's Complaint.  That statute contains a "Bill of Rights for Members of Labor Union Organizations" and, as relevant here, these rights include "Safeguards against improper disciplinary action." *Id.* § 411(a)(5).  In full, this provision of the statute provides that:

> No member of any labor organization may be fined, suspended, expelled, or otherwise disciplined except for nonpayment of dues by such organization or by any officer thereof unless such member has been (A) served with written specific charges; (B) given a reasonable time to prepare his defense; (C) afforded a full and fair hearing.

*Id.*  The statute further creates a federal cause of action to remedy violations of these rights, authorizing "such relief (including injunctions) as may be appropriate." *Id.* § 412.

As the Third Circuit has explained, LMRDA represents a "delicate balance" Congress sought to strike between a union's right to self-governance and "its sensitive obligations for fair dealings to its members." *Brady v. Trans World Airlines, Inc.*, 401 F.2d 87, 99 (1968).  As the legislative history surrounding the statute's enactment makes clear, it arose out of "congressional concern with widespread abuses of power by union leadership." *Finnegan v. Leu*, 456 U.S. 431, 435 (1982).  To that end, the statute's "primary objective" is "ensuring that unions would be democratically governed and responsive to the will of their memberships." *Id.* at 436; *see also Hall v. Cole*, 412 U.S. 1, 14 (1973) (LMRDA "was specifically designed to protect the union member's right to seek higher office within the union").  Nonetheless, it must always be applied with an eye towards "the concept of union self-determination as reflected in the spirit of our national labor policy." *Lewis v. Am. Fed. of State Cnty. & Mun. Emp. AFL-CIO*, 407 F.2d 1185, 1198 (3d Cir. 1969); *accord Dolan v. Transport Workers Union of Am.*, 746 F.2d 733, 740 (7th Cir. 1984) ("[C]laims arising under LMRDA . . .  derive a more limited scope from the

congressional policy of noninterference with unions' internal affairs.").

In his motion, Garrett argues that he has a reasonable probability of succeeding on his claim, in that the proceedings which resulted in his removal from office violated Section 411(a)(5) of LMRDA in three respects.[1]  First, Article X, § 6 of the AFSCME International Constitution require that before a member is disciplined, he or she must be provided with written charges that cite to "the specific Section" of the Constitution alleged to have been violated. Garrett argues that this did not happen, since the Hearing Officer's decision found violations of the District Council 33 Constitution, and charges pursuant to that document were withdrawn in the December 2023 letter.  Second, Garrett complains that Piccioli noted violations of the AFSCME Financial Standards Code, when the AFSCME's International Constitution only authorizes disciplinary action for violations of the Constitution itself.  Lastly, Garrett faults Piccioli for finding that he improperly administered the Legal Services Fund, since these supposed infractions were likewise not a violation of the AFSCME International Constitution.

As a theory of liability under LMRDA, these arguments are fatally flawed.  They appear to proceed from the assumption that the due process rights protected by Section 411(a)(5) of the statute include every procedural rule a union elects to put in place.  This is incorrect.  As the text of Section 411(a)(5) explains, this provision protects three things: (1) the right to be served with "written specific charges"; (2) the right to be given "reasonable time to prepare his defense"; and, (3) the right to a "full and fair hearing."  29 U.S.C. § 411(a)(5).  Garrett has not shown that any of these rights was violated in the disciplinary proceedings that resulted in the bar on his participation in the upcoming election.

---

[1] Garrett's motion also includes a citation to Section 411(a)(2) of LMRDA, which protects the rights of union members "to express any views, arguments, or opinions."  29 U.S.C. § 411(a)(2).  But beyond this single reference, his briefing offers no explanation for how the procedural violations he complains of undermined his free speech rights.

First, Garrett was provided with "written specific charges," as required by Section 411(a)(5).  All that this provision mandates is "a detailed statement of the facts . . . that formed the basis for the disciplinary action."  *Int'l Bhd. of Boilermakers, Iron Shipbuilders, Blacksmiths, Forgers and Helpers v. Hardeman*, 401 U.S. 233, 245 (1971).  That is exactly what the charge against Garrett consisted of, and at oral argument on this motion, he conceded as much.  Thus, even assuming AFSCME's procedural rules required that written charges include citations to specific constitutional provisions, this deficiency alone would not amount to a cause of action under LMRDA.  *Accord Cephas v. Int'l Longshoreman's Assn.*, 2018 WL 4326939, *3 (D. Del. Sept. 10, 2018) ("[A] union need not reference specific constitutional provisions to meet Section 101(a)(5)'s specificity requirement.") (citing *Frye v. United Steelworkers of Am.*, 767 F.2d 1216, 1223 (7th Cir. 1985)).

Attempting to show otherwise, Garrett points to *Murdock v. Am. Maritime Officers Union Nat'l Exec. Bd.*, 603 F.Supp.3d 1325 (S.D. Fl. 2022), for the proposition that a LMRDA claim is likely to succeed when a union violates its own constitution in disciplining a member.  That case is inapposite.  It involved a union officer who was impeached for specific actions that were not described in the written charge against him—namely, his "fail[ure] to take charge of the collection of all Union funds."  *Id.* at 1331-32.  As the court explained, this deficiency materially prejudiced the union member's ability to defend his conduct at the impeachment hearing.  *Id.* at 1332.  That scenario is markedly different than the one here, where the charges against Garrett included all relevant factual accusations.  *See e.g., Curtis v. Int'l Alliance of Theatrical Stage Employees & Moving Picture Machine Operators*, 687 F.2d 1024, 1027 (7th Cir. 1982) (a charging document "does not require the elaborate specificity of a criminal indictment").

Section 411(a)(5)'s second requirement is that union members be "given a reasonable

time to prepare [their] defense." 29 U.S.C. § 411(a)(5). Garrett does not maintain that lacked

sufficient time to prepare his defense.

Finally, Section 411(a)(5)'s final clause requires that union members be "afforded a full

and fair hearing." This provision incorporates "the traditional concepts of due process," such as

the right to confront witnesses, produce evidence, and proceed before an impartial tribunal.

*United States v. Int'l Bhd. of Teamsters*, 247 F.3d 370, 385 (2d Cir. 2001); *Knight v. Int'l*

*Longshoremen's Ass'n*, 457 F.3d 331, 343 (3d Cir. 2006). Again, Garrett makes no argument

that the processes against him were deficient in this regard.

Accordingly, in that Garrett has not shown that it is probable—let alone indisputably

clear—that is likely to succeed on the merits of his LMRDA claim, his motion necessarily fails.

### B.  Irreparable Harm

A likelihood of success on the merits is a prerequisite to the issuance of a preliminary

injunction. *Am. Express Travel Related Servs., Inc. v. Sidamon-Eristoff*, 669 F.3d 359, 366 (3d

Cir. 2012). Nonetheless, for completeness, the Court will consider the remaining three factors of

the analysis.

"Our frequently reiterated standard requires plaintiffs seeking preliminary relief to

demonstrate that irreparable injury is *likely* in the absence of an injunction." *Winters v. Nat.*

*Resources Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (emphasis in original). What's more, this

likely harm must be of a sort "which cannot be redressed by a legal or an equitable remedy

following a trial. The preliminary injunction must be the only way of protecting the plaintiff

from harm." *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 801 (3d Cir. 1989).

Here, the sole injury identified in Garrett's motion is his present inability to stand for re-election

as the District Council 33 president; absent injunctive relief, he argues, he will lose his

opportunity to serve in this role at least for the next four years.

In principle, irreparable injury is likely when a plaintiff is improperly prevented from competing in an upcoming election. *Cf. Valenti v. Mitchell*, 962 F.2d 288, 299 (3d Cir. 1992) ("Certainly, the injury to a potential candidate resulting from denial of a place on the primary ballot is great."). That is particularly true in the context of union elections. The LMRDA reflects a clear national policy set by Congress of "promot[ing] union democracy," and Section 411(a)(5) in particular was "specifically designed to protect the union member's right to seek higher office within the union." *Murdock*, 603 F.Supp.3d at 1332 (citing *Hall*, 412 U.S. at 14). So, Garrett's arguments regarding the likelihood of irreparable harm are well taken.

Nonetheless, several additional considerations in this case weigh against finding in Garrett's favor on this factor. First, despite the urgency conveyed by Garrett's motion, his actions tell a different story. The record before the Court shows that after Piccioli issued his decision on February 20, 2024, Garrett waited nearly a month—until March 13—to both lodge his internal appeal and file the Complaint in this matter. Then, once his Complaint and motion for preliminary injunction were filed, Garrett waited again—until March 26—to serve these documents on Defendants and file the corresponding Certificates of Service. *See* Fed. R. Civ. P. 65(a)(1) ("The court may issue a preliminary injunction only on notice to the adverse party."). At that point, just two weeks remained before the deadline identified in Garrett's motion (April 9) for being placed on the ballot, forcing the Court to issue a highly expedited briefing schedule. His "long delay before seeking a preliminary injunction implies a lack of urgency and irreparable harm." *Bella Vista United v. City of Phila.*, 2004 WL 825311, at *10 (E.D. Pa. Apr. 15, 2004) (quoting *Oakland Tribune, Inc. v. Chronicle Pub. Co.*, 762 F.2d 1374, 1377 (9th Cir. 1985)).

Additionally, as noted, an injury is only irreparable when "a preliminary injunction is the

only way of protecting the plaintiff from harm." *Instant Air Freight Co.*, 882 F.2d at 801.  In this case, Garrett has at least two alternative means for obtaining the relief he seeks.  First, as noted, he has appealed Piccioli's decision to the full Judicial Panel; if he prevails, that body has the authority to vacate the punishment against him.  Second, the LMRDA itself provides a remedy if a union member is improperly prevented from competing in a leadership election.  Title IV of the statute authorizes members to file a complaint with the United States Secretary of the Department of Labor for "violation[s] of the constitution and bylaws of the labor organization pertaining to the election and removal of officers."  29 U.S.C. § 482(a).  If the resulting investigation substantiates the complaint, the statute grants the Secretary broad remedial authority.  *Id.* § 482(b).  Because this authority specifically includes the power to order a new election, *id.* § 482(c), it cannot be said that Garrett's injury will be "irreparable" absent injunctive relief.

### C.  Balance of the Equities

The third step in the preliminary injunction analysis requires an evaluation of the severity of the impact on defendant should the temporary injunction be granted and the hardship that would occur to plaintiff if the injunction should be denied.  "The policy against the imposition of judicial restraints prior to an adjudication of the merits becomes more significant when there is reason to believe that the decree will be burdensome," and "the injunction usually will be refused if the balance tips in favor of defendant."  Wright & Miller, 11A Fed. Prac. & Proc. § 2948.2 (3d ed., Apr. 2023 update).

The equities on Garrett's side of the ledger are straightforward: he maintains he will be harmed if prevented from running in the upcoming District Council 33 election.  Defendants, on the other hand, argue that an order requiring that Garrett be placed on the ballot would subject

the union's members to substantial uncertainty pending the resolution of his procedural

challenges.  *Cf. Sincock v. Roman*, 233 F.Supp. 615, 621 (D. Del. 1964) (three judge panel)

("Any disruptive force applied to the registration and election processes . . . will cause confusion

and possible disenfranchisement of many electors.").  Then, even if Garrett loses the election, his

mere presence on the ballot might still injure the union; in the event his LMRDA challenge

proves unsuccessful, other losing candidates might well lodge a post-election protest on the

grounds that they might have succeeded had Garrett not attracted votes.  This, in turn, could lead

to a costly re-run of the election, creating additional uncertainty and impairing the union's ability

to effectively function.

        In the Court's assessment, while these competing interests tip in favor of the Defendants,

whether injunctive relief is granted or denied, one of the parties will suffer a significant hardship.

                **D.  Public Policy**

        "The final major factor bearing on the court's discretion to issue or deny a preliminary

injunction is the public interest"—*i.e.*, "whether there are policy considerations that bear on

whether the order should issue."   Wright & Miller, *supra*, § 2948.4.  In this case, the parties

agree that the relevant public policy considerations are: (1) "the desire to democratize unions,"

and (2) the need to resist "extensive and unnecessary invasion of their independence."  *Dolan*,

746 F.2d at 740.

        While charting the correct path between competing public interests can be a fraught

undertaking, here Congress has done all the heavy lifting.  As explained, it carefully crafted the

LMRDA to strike the desired balance between ensuring that unions are "honestly and

democratically run" and taking care "neither to undermine self-government within the labor

movement nor to weaken unions in their role as the bargaining representatives of employees."

                                14

*Id.* (quoting S. Rep. No. 187, 86th Cong., 1st Sess., at 5 (1959)).  So, by hewing to the framework set forth in that statute—which authorizes interventions in "discrete areas of union management" while proscribing "comprehensive administrative review of union-management policies," *id.*—courts necessarily strike the proper balance between the equities at stake.  Here, as discussed in Part III.A, Garrett is unlikely to succeed in his claim that Defendants violated the LMRDA.  Thus, denying him the remedy he seeks would be consisted with the public interest.

## IV.     CONCLUSION

In conclusion, for the reasons set forth above, Garrett request for a preliminary injunction will be denied.

An appropriate order follows.

**BY THE COURT:**

**/s/Wendy Beetlestone, J.**

**_____**

**WENDY BEETLESTONE, J.**